Good morning, Your Honor. May it please the Court, I'm Brendan Leary. I'm the counsel representing Matthew Quinn Mason, the petitioner in this matter, and we're asking this court to vacate the judgment of the district court wherein Judge Bailey granted the, excuse me, dismissed Mr. Mason's petition to vacate his conviction under 28 United States Code section 2255. Your Honor, a very quick housekeeping matter, and I apologize for this error, but I'd like to correct something in my brief. At the bottom of page 16 and the top of page 17, excuse me, I quote, there's a block quote that I attribute to a United States Supreme Court case, Williams v. Taylor. Unfortunately, somehow in the drafting, editing process, that's an incorrect attribution to that case, Your Honor. I got that from a treatise, the Criminal Practice Manual update chapter 6.3 entitled, Pre-trial Failure to Investigate. It's published by Thomson Reuters. It's clearly not binding precedent, Your Honor. It's persuasive secondary source. It's a treatise that talks about the Williams v. Taylor case. I apologize and regret that error. That doesn't change the legal standard here. The legal standard is simply under the two-part test under Strickland v. Washington, whether the underlying trial counsel's performance was ineffective under the Sixth Amendment. It's a very standard and well-known legal standard here under Strickland, which is the two-part test as to whether the underlying trial counsel's performance was defective, and that is whether it fell below an objective standard of reasonableness, and then the second issue is obviously the prejudice problem. Before you leave that, let me just point out one other thing. When you do the table of contents, you're supposed to tell us on what page each witness's testimony begins. You know, just to say transcript of testimony 1 through 500, that doesn't help us when we try to locate individual testimony. I'm just telling you why you're bringing up those things. They would help us in the future. Your Honor, just so I'm clear, are you referring to like Mr. Klinkspiel's testimony? When you do your joint index, you do an index, and this says transcript of day one, pages 39 to 134, but when you cite the testimony of an individual witness in your... You have to break it out by witness. You need to break it out by witness. I apologize, Your Honor. That's okay. Go ahead now. Let's get to the merits. Thank you for that, and I didn't do that, and I regret that. The legal issues are simple in this case, and in our view is that this court has to conduct a de novo review and determine whether the objective standard of reasonableness, and whether under Strickland, the second part test is whether that performance prejudiced Mr. Mason, and... We had an evidentiary hearing on that. Indeed, Your Honor. This court vacated... Tell me the testimony that was taken. Certainly. At the evidentiary hearing about a year ago, Mr. Mason testified, the petitioner. His underlying trial counsel, Mr. Garrett, testified, and a lieutenant from the Eastern Regional Jail, Eugene Bittinger. We also... He was a chief correctional officer at the institution? He wasn't the chief, Your Honor, but he was in charge of the records. He was a correctional officer there? Correct, Your Honor. He was able to provide testimony, authenticate records and exhibits. The government introduced several exhibits. We Your Honor, just so the record is clear, there was... This court, when it remanded for the evidentiary hearing, there were two issues at play. Whether that Mr. Garrett failed to communicate plea offers to Mr. Mason, and then the second issue was the housing arrangements. We have not pursued in this appeal, Your Honor, the first one about the failure to present plea offers. The only issue that we've presented here is the fact that Mr. Garrett, in our view, didn't move to continue, didn't investigate the supplemental 404B notice that was supplied by the government to approximately two days before the start of the trial, that for the first time fleshed out the testimony of Mr. Clinkscale. So the evidence with respect to the cell arrangements... Yes, Your Honor. Would have been impeaching evidence? We believe it would have been fatal impeaching evidence, Your Honor, because... Understandably, but isn't it unusual that impeaching evidence becomes the basis for a new trial? I think you'll find a lot of statements in the precedents that impeaching evidence is seldom... You know, if you fail to locate a witness, if you fail to locate a witness, now that's, that's, you know, a pretty big deal. If you fail to locate a very relevant witness and you don't really try something, that's fine, but impeaching evidence is very seldom used as a basis for a new trial. In isolation, Your Honor, I agree with that. However, I think the court, in your question, hit on a very crucial, that evidence is, and in this case, the government had to prove at trial that the actions that Mr. Mason took that evening were to retaliate against Mr. Clinkscale for his testimony against the co-defendant. And the issue in this case, Your Honor, was intent. In fact, the government acknowledged in its opening statement to the jury that the issue in this case was intent. And Mr. Garrett, to his credit, talked about that a lot in his closing argument, that the for each three counts in the indictment, that the actions that evening by Mr. Mason were with the intent to retaliate. And the only evidence that the, only direct evidence, that the government presented at trial to establish and meet its burden of intent, was Mr. Clinkscale's testimony. And the crux of that testimony. But what are we supposed to do? I mean, we, we, we earlier remanded for an holds the evidentiary hearing and then comes up with a finding which is dead on point on the issue of prejudice and says, quote, the testimony elicited from the evidentiary hearing tends to corroborate Clinkscale's testimony. So, you know, there's no, um, a prejudice here. And then he makes a specific finding on page 750 of the appendix. Petitioner and Clinkscale were cell neighbors above and below in the same pod section, a five or 10 day period. Um, and then he goes through with how each of the three incidents could happen. I know everybody tries to present everything is a mixed question of fact and law. When the findings below are against them. But this seems to me about as close to a factual finding as you can get. And we'd have to almost rule it clearly erroneous to, um, judge in your favor. Well, Your Honor, I would ask the court to do that. We rule it's clearly erroneous. Well, we're asking the court to vacate so that, um, actually, I guess the remedy that we're seeking here is for the court to grant the petition. Perhaps I misstated it in my what to grant the petition because Judge Bailey dismissed the petition and held as the court as your correct, Your Honor, he determined they made a finding that there was no prejudice. But in order to dismiss the petition, we'd have to conclude after an evidentiary hearing that the, um, that the district court's finding of no prejudice was clearly erroneous. Well, we would submit that. I think that the district court's finding on that score was erroneous. I thought your position was it was impossible. Well, there are certain instances in his testimony, Your Honor. He talks about that there were three specific interactions at the Eastern Regional Jail between Mr Klingscale and Mr Mason that forms the basis for the intent to retaliate, one of which absolutely is impossible, Your Honor. And that brings me to impossible is clearly erroneous. I would I would submit. Yes, Your Honor, I think it is. I think that's what your position. I danced around in terms of answering that question. I'm not sure I'm following you, Your Honor. I apologize. I thought that that, for example, when the conversation occurred between Mr Klingscale and Mr Ray, where they were outside the window, correct through the window through the cell, he says that that occurred the night before trial. It didn't. And that's in your position is, as I understand it, that's impossible for your client to have been standing there. That's correct. The not at that location the night before the records reflect that the records show that absolutely the records and Lieutenant Bittinger's testimony at the evidentiary hearing support that that did not occur on either August 29th or August 30th 2008. That's absolutely correct. Now, I think the district court talks about how it could have happened another day, but that was never presented to the jury. And that's where we believe the prejudice here is. What was the third one? Well, there were three, Your Honor. The first one was there was a note engraved in a bar. So I know what was the other one? The third one was Mr Klingscale testified that when he came back after testifying against Mr Ray that evening, as he was coming into the A five pod, there was a group of cellmates or other prisoners there who were loudly proclaiming said he saw. That's an important distinction. Your position. That's impossible. That is impossible. Because at page 65, Your Honor of the joint appendix, which is Mr Klingscale's testimony, he says that Mr I'm gonna be clear. He doesn't say that he saw him. He says Mr Mason was there. Now, Lieutenant Bittinger testified that the way the cell pods are arranged, you can't see into an adjacent pod. We know from the record that Mr Mason was in the shoe in the adjacent pod. So Mr Klingscale could not have seen him. Now, could he have heard? Yes, I think the records in the layout of the jail suggest that perhaps he could have here. But the testimony led the jury to believe that he saw Mr Mason at the entry of the pot. Let me that is impossible. Let me ask you one other question. No, I'm here to answer questions. Did the did the court our court ever resolve the question of credibility as to what your client told his lawyer when confronted with the evidence against him? That, uh, this guy was gonna say he retaliated in these events that occurred. Was that ever resolved as to what? In other words, well, not there was deficient performance. Your Honor, I don't believe it was. And that's one of our arguments as to why there was deficient performance. Because Mr Garrett and Mr Mason, I think both testified at the evidentiary hearing that when late closure came, there was never a conversation that Mr Garrett never shared this information with Mr Mason such that Mr Mason could say, Hey, I'm in the shoe. It's impossible for these things to have occurred. Mr May Mr Garrett indicated, I think, at the evidentiary hearing when he testified, he said that he had a conversation after the jury had been selected when Judge Bailey addressed the issue. Those discrepancies are never resolved. I don't believe I would. No, Your Honor, I don't believe the district court addressed that. I think the district court's focus going back to Judge Wilkinson's inquiry is the is the prejudice prong. And I'll concede. I think that that is our heart of burden here. But the real question here when you mean you can look at the forest, you can look at the trees here and, um, the real question here is were Mason and clinks clink scale, um, sufficiently close to one another? Um, that Mason was, um, able to, uh, observe, um, clink scale and his cell and and what? And, um, an evidence that clink scale had testified against Ray. And the question is, you know, were they? Um, what was it? Maybe the specific date is is is is not 100% correct. But the question is, was there sufficient proximity between clink scale and Mason so that Mason was able to observe clink scale insufficient enough? Um, detail that he was able to pick up that that clink scale had earlier testified against Ray and what the district court is saying. I think at the at the at the ultimate conclusion is, Yeah, these people were were close enough and Mason was able to to to to get the to form an opinion as to clink scales in, um, intent here. And he was and he was able to piece together the fact that clink scale had. We know from the records, Your Honor, that there was a period of time where Mr Mason and Mr Clink scale approximately 10 days in August of 2008. Excuse me, 2007. There was a period of time where Mr Clink scale and Mr Mason were in the same a five pod at the Eastern Regional Jail. There's no doubt about it. The records speak for themselves. There was a 10 day overlap. However, the problem with the cross examination by the underlying trial counsel was he didn't zero in. In fact, I would argue he didn't really zero on on any of these three interactions. He only kind of focused on one. The facilitation of the discussion between Mr Ray and Mr Clink scale through the through the window, the cell window. He didn't even touch on the soap note or the instance where he was coming back into the pot after testimony. And I think that the records and the dates and that's the key inquiry. I believe that he wasn't able. He could have pinned him down as terms as some of these were, in fact, impossible. Um, now, I think the district court talks about it in its order that with the soap note in particular, perhaps Mr Clink scale just misremembered in terms of when, or excuse me, in terms of the facilitation of the meeting through the through the cell window. Perhaps he just missed recalled what date it occurred. But I would argue that the dates here are crucial to the cross examination and the impeachment because I believe Mr Garrett could have led Mr Clink scale down the primrose path and cross examination and gotten him to had an as what defense counsel calls an aha moment in front of the jury where it couldn't have happened on those dates. And I think that's the key problem here. The dates, he didn't talk about those dates. And if he had known the layout of the jail, then he would have known that the conversation when I say he, Mr Garrett, he would have known that this allegation that he had talked, uh, that he had when he came back in after testifying that he couldn't have seen that to have occurred, that it was an impossibility. That's why I'm a little bit first. I'll ask for a little additional time. That's why I'm a little bit frustrated that this credibility decision hadn't been resolved because if the defendant has only said to him, man, that guy's lying and that's it. I'm not sure a defense lawyer would have rendered ineffective assistance of counsel by not asking for a continuous and time to investigate that. Although they hadn't had given him details and said, you know, that that can't be. We weren't even in the same block or plot or whatever. I think there's a different situation. I think there are two instances just real quick. And that is that I think the testimony to evidentiary hearing indicated that from both Mr Garrett and from Mr Mason that this discussion didn't occur, that they didn't have time. Now, the record reflects that after the district court ruled, there's a pause where Mr Garrett consults with Mr Mason. Now, what the substance of that conversation is, I think that Mr Mason said that it didn't happen and that he was in the shoe. The only thing I could point out is that when Mr Garrett filed a motion for a new trial and promotion for a judgment of acquittal subsequent to the verdict, he did for the first time lay out that Mr Garrett that Mr Mason was in the shoe. So did this at the evidentiary hearing, both Mr Mason and Mr Garrett testified that for the first time they discussed this was after the jury had been impaneled and the district court took a short break before opening statement and too late in our view information to the defense. I'm sorry, your honor. When did at what stage, what point did the government provide this information to the defendant two days before trial? Your honor, the jury was picked on monday starting at one o'clock on saturday. The supplemental notice was he filed. I've reserved some time. There was a vigorous cross examination of clink scale at the trial. I would, your honor, I would disagree with your characterization of vigorous credit for anything. In fairness, Mr Garrett's a friend of mine and I don't want to beat up on Mr Garrett. That's not what I'm here to do. I would, as of yesterday, I think that Mr Garrett's lack of preparation hampered his effective crossing a cross examination of Mr clink scale. And in particular, he cross examined him about each of the incidents. But more than that, he questioned during the cross examination about why he never told anybody he was incarcerated with Mason prior to that time. And then he questioned clink scale also about the deal the government was did his best to shake clink scales testimony. And he said, wait a minute, this is coming up. You haven't told anybody prior to this time that you ever incarcerated with Mason's a bunch of who they I think Mr Garrett's cross examination. My reading, your honor, my exam, my reading of Mr of Mr Garrett's cross examination of Mr clink scale was focused on three things. Number one, that his statement under oath at trial was inconsistent with his grand jury testimony. Secondly, he did inquire briefly about the facilitation of this meeting between rain clink scale and Mason's cell, but he didn't get into the details of it. Mr clink scale just said, well, we were talking through the cell and the jailers didn't see us. And then Mr Garrett then turned to another matter. The final issue of the cross examination was Mr Garrett focused on was the evening of the incident when Mr clink scale fled and then called the police was different from his testimony of trial as to the events that occurred with the shooting, not at the jail. So, um, was there any plausible alternative motivation or suggestion of why anybody would have fired five shots at clink scale? Well, I think the government's theory, your honor, was that I mean from the defense. No, I think that I think the defense, not that you had a burden, of course, right? I think the defense's theory was that there were three individuals in the car, Mr Latta, the co defendant and then another gentleman who to this day has never been identified and Mason and Mason. That's correct. Okay. And I think that the that the defense at trial was these other people were doing the shooting. Mr Mason was just driving. So what was that would have been sufficient to convict him. Excuse me. Even if it were true that Mason was simply the wheel man. If he had knowledge of what the enterprise entailed, that doesn't negate his guilt, right? No, he doesn't have to be the shooter. He doesn't have to be. I agree with that. Okay. Mr Latta testified that they were he Mr Latta was shooting for no reason. Mr Latta and the jury clearly didn't believe that. I agree with that. And Mr Latta shoot somebody for no. Well, some people do. Well, Mr Latta also testified that when they were in the car following Mr Clink scale or it might have been after the shooting that this third gentleman tank made some comment about how he told on s. Now that's a hearsay statement that wasn't objected to. Nonetheless, it came in. So there is that statement. Now, there are two statements because didn't allow to say testified against me. Uh, Your Honor, I would, I would have to defer to the court. My understanding of Mr Latta's statement at trial was that we were shooting for no reason and that he told the jury that Mr, uh, the tank made a reference to. He snitched on Esco, right? That's in there. I thought he, excuse me. I thought he said something. He testified against me. Well, no, Mr Latta, uh, a lot of quoted tank. I think. But well, there may have been, Your Honor. But going back judge Davis to your question, um, that was Latta's statement. Now that was, I think, to why he was shooting. Now, why is Mr Mason driving stating in a bedding? Well, I mean, that's certainly the government's theory. But I think that the defense at trial was well, they haven't proved that it was Mr Mason's intent. Perhaps it was tanks intent or perhaps it was Mr Latta's and he pleaded guilty. So obviously, uh, that was his intent. But, um, the defense trial was they didn't prove intent and that his action as an element, they've got to tie this retaliation to a to particular testimony. I don't mean details of testimony, but to a particular trial. I'm not that right. I'm not sure I'm following you. The indictment alleged that the shooting was in retaliation for testimony at a particular trial. Mr Ray's trial. So they've got to tie this shooting to that particular trial, which is why they've got to, you know, show what it is, why it is a shooting is because of clink scales testimony at this particular trial and not for some other reason, because if it's for some other reason or some other trial or testimony against another person, then you can't establish the element. I agree with that. I agree with that. I reserve some time for rebuttal and I'll be happy to answer further questions. I think my time is up. All right, let's hear from the government. May it please the court. My name is Aaron rise and Weber. I'm an assistant United States attorney and I'm here on behalf of the Apple II, the United States of America. Um, it's United States position that the district court was right on and focusing its order and its decision on the prejudice prong of Strickland. And as this court is aware, the Strickland case set forth that if the defendant does not meet his burden under the prejudice prong of Strickland, then the reviewing court need not consider the I'd like to begin Chief Judge tracks tracks there with addressing your your one of your last statements regarding the particular trial of Mr Ray. I believe that the elements of the offense require that the United States only established that there was an official proceeding. Um, at which specify which one? Correct. You're on any special, any official any a an official proceeding you did in the indictment? Yes. And we did in the indictment. Um, I think in this case, let me say. So when when Mr Latta testifies that tank came out high styling over something, I'm saying talking about this person had told on him in some certain something, something and he has Mason to follow him. If the jury believed that part that that's sufficient to establish the element of testifying an official proceeding. I don't think so. I don't think that I agree with you is that this guy has said two different things. Lot has said two different things. One, let's get him for testifying against me and two, let's get him for testifying against Esco. I agree with you, Your Honor. No, what Mr Latta testified to that day is not, I agree, sufficient to have established, which makes it become because he's saying two different things or two different people. Now, this testimony about what relation, what, what, uh, link scale will say it or what involvement you're the defendant had in this case with Mexico becomes more important because he's the one that's got it. You know, you got to strengthen his testimony. That is this case that everybody's talking about. And Mr Latta, I'm sorry, former case involving Ray. I'm sorry. Yes. And and Mr Latta was impeached in this case with an audio recording, which is not a part of our of our flat record in this case. And that audio recording was played for the jury. And that audio recording was taken the day, the morning after the shooting. And it was in that audio recording that the jury heard in Mr Latta's own voice and his own words say, um, Mason told me to shoot at him and that Mason or clink scale had put Esco in jail for life. Um, that did only come in for impeachment. Mr Ray Cecil Ray's street name. His alias is Esco. And so the morning after the shooting, Mr Latta is indicating he knew the alias of Mr Ray that he had heard it. Mr Mason refer to Mr Ray as Esco in the car and said that clink scale had put Mr Ray in prison for life. Mr Correct. And Mr Ray did receive, um, a sentence of life in prison. So there was accurate information reflected. Tell me how that came in before the jury. Um, in the form of a form of Mr Latta's statement that came in before the jury as impeachment. Um, with a prior inconsistent statement when impeach is a defendant impeaching him. Um, I impeached my own witness. Your own I did. Okay. Now I did. Does that come in for a substantive value? It did not come in for substance for pure impeachment. Consider that correct in determining guilt or innocence as far as substantive evidence. Correct. And the judge made the jury aware of that. And I reiterated that in my closing argument as well, that it was only for impeachment. Um, you chose to put latter circumstances. I had interviewed him. He's surprised in the side, and I was surprised. Yes, you do what you gotta do. I did. But the effect now is that that is X out, right? Yes, because the jury can infer the opposite of what he said on your direct from the impeaching take, right? Correct. So now what do we have other than clink scale? Um, I believe that first of all, in other than clink scale, um, the jury saw video surveillance tape from Walmart. Um, they watched Mr Mason and the unknown true name unknown individual approach. Mr Clink scale. Um, Walmart has unbelievably placed cameras which captured not only the two men leaving following Mr Clink scale getting into their vehicle, two men. Mr. Mr. Mason was driving the vehicle. Mr Lada was seated in the front passenger seat, and he never went into Walmart. He remained in the vehicle the entire time. Correct. And then the unknown unnamed individual was in the back seat, and you saw the jury's watch the three of them make a U turn in the Walmart parking lot to begin to follow Mr Clink scale. And no question. Mason's drive. No question. Mason is driving. Um, also, um, I'm sorry. I think that the judge's instruction that intent can be inferred. Um, it's not required that it be proven through direct. Was there any other motive suggested for, um, at any point in time for the, um, shooting of, um, Mr Clink scale? No. And Judge Davis asked that earlier. And I was very interested in the in the answer to that. There weren't. I mean, what other motive would was part of the motive was brought up other than retaliation. There was no other motive. Mr Lada testified that he shot at Mr Clink scale because he was hallucinating off of boat, which is marijuana dipped in P. C. P. And that was the only reason he gave for shooting at Mr Clink scale. Was there ever any evidence as to whether or not this person tank had been testified against? No, there was no, you know, his name evidence. We still do not know his name. Um, there was no evidence that Mr Clink scale has ever testified against anyone else. Um, in any person. I'm sorry. Did he testify? No, he did not. He did not testify to that effect, except that I can, um, put forth that he did testify that, um, from the time of his testimony in the raid trial until March 2000 and eight, he himself was incarcerated. But the defense never suggest that there's any other reason to be shooting a clink scale. No, you're other than his testimony against that's correct. Um, and so the United States position is that, um, there's no question that that, um, Mason actually fired the shots. Mason did not fire any shot. But he was that he was driving and following clink scale. Correct. He was the driver. He was the driver. And there's no question about that. There's no question about that. Mr Lotta testified that Mr Mason was, in fact, driving the vehicle. Um, and that video surveillance, you're able to discern the clothing that the individuals have on when they leave Walmart. And then you can see who gets in the driver's seat of the vehicle. So the only validation for the testimony against Ray. Correct. And, um, as to that, there was no other motive for the shooting suggested. No, Your Honor, I would like to direct your attention, though. Um, and it is in regard to the second incident about which Mr Clink scale testified, and that is his if you look at the joint appendix at page 64. Um, Mr Clink scale is not the one who actually testifies that that occurred the night before trial. Um, I, in fact, was when I asked a very leading question, um, of my witness on direct examination. I am the one who says, um, on the night before Mr Ray's Well, you wouldn't have just pulled that out of the air. I did not just made the date unless you had some reasonable basis. Correct. And he had told me that during a pretrial witness interview, which is why I worded my question that way. The, um, uh, you know, the district court holds an evidentiary hearing, and he goes through these three different instances and everything. And, you know, naturally, it would be up to the defense to cast, try to cast doubt on those. But, um, is the ultimate question of even apart from the details, whether, um, the petitioner and and clink scale hung around each other enough and talked to the same people enough. Um, because that clink scale would, I mean, that the clink scale would would have, uh, that Mason would have an idea of what clink scale was up to. I mean, when you're talking about a jail environment, you're talking about information that's swapping hands all the time, and pretty much people know what's up if they're in particularly know what's up in terms of who snitched on whom, because that's an offense against the, um, against one another and and snitches. Snitches are among the most endangered people in a in a jailhouse environment. And so if, regardless of the specifics of the incidents, if the gist of the incidents and the gist of the credibility findings were that these people were together for a significant amount of time and that they, um, and and that they're, they had some of the same friends and they talked to the same people, he, you know, they knew what was up. Um, I mean, that seems to me the larger point that's, that's at issue here. These people weren't in different facilities. They were around each other. They were talking to the same people. They observed each other. And in a jailhouse environment, you know who snitches on whom. That's, that's hot stuff. That's a hot commodity in a jailhouse environment, because those folks are regarded as real traitors, and they're marked men and that's kind of the reality of it. Uh, and I think that's what the district court was picking up on. I agree, Your Honor. And and that's where I disagree with with, um, um, appellant statement that these jail records were fatal. Um, in not using them to impeach Mr Clink scale, because, in fact, had Mr Garrett obtained those records, they would have confirmed that Mr Mason and Mr Clink scale were incarcerated together for a 10 day period in August of 2007. Um, at the joint appendix, beginning at page 5 98. Um, the photographs, which came out terribly in the joint appendix, but but were beautiful at the evidentiary hearing. Um, I will just explain to you the layout of this pod. It's 16 a 16 man pod and you enter the area. There's a common area with almost like steel picnic tables, and there are cells on the bottom tier and cells on the top tier. And the 16 men that are in this pod socialize together. They have a common space. If you're in the same pod, everybody knows everybody else's business. I agree, Your Honor. And they also, um, Lieutenant Bittinger testified at that, and they were in the same pod. Were they not? Um, Mr Clink scale was on the second tier, and Mr Mason was right below. I'm on the first tier. They are even their doors remain open to their cells, and they are free to move about. And they shared a common area. Correct. They share a large common area on the first floor. How far had they driven that night before the shots were fired? Um, I would estimate it's about about a two mile drive, including a small portion that was on Interstate 81 for about a half a mile. Um, Mr Clink scale did testify. He tried to evade, and it was even speeding at one point through a 25 mile an hour area that they continued. He knew he was targeted. Yes, he by the time he left the Walmart, he recognized Mr Mason from that period of incarceration, and he did tell that to the police the morning after the shooting. He said he knew the driver from their period of incarceration together. Um, so it's the United States position, and I know that Judge Wilkinson, you have, um, are familiar with this case that the two prior times it has come up on both direct appeal and, um, after the certificate of appeal ability, you have been a part of those panels. But the United States position is that Mr Mason just can't sustain the burden of Strickland. Um, as to either prong the pride. Well, yeah, but I mean, we did. You know, it's not as if we somebody listen to these different people who were actually there, um, and sort of find out what is. And so, ultimately, he comes out. Look, this from what I've heard testimony elicited here corroborates clink scales testimony. That's what he comes up with. And for those reasons, we ask that you affirm the district court's decision in adopting the report and Mr Mason's petition be dismissed. Why'd you make the late disclosures? Um, that's the day I brought a smile to your face. So there must be an interesting story behind that. Mr Leary predicted that that is a question I would be asked today. Um, that was the day that Mr Clink scale told that part to me for the first time on that Saturday, and I immediately disclosed them. Mr Leary and I, as an aside, we're both law clerks together for the late Judge Broadwater. Um, so this has been a nice experience for us to argue against each other. Thank you hear that. Thank you, Larry. What other explanation is there for why Mason is riding around with these people who are shooting at Mr Clink scale other than his? But then it's because of clink scales testimony against us. I don't think there is any other evidence in the record, Your Honor. I mean, I think that there's circumstantial evidence, certainly, that he was in the car and that the government tried to argue and argue successfully that the point of his driving the vehicle or being the wheel man was to retaliate. Let's suppose this council had had all this information and had impeached clink scale that he's not telling the truth about these particular incidents. But I still don't know how you see how you get around is he's still in the car driving the car chasing this guy while they're shooting at him. Well, I know Mr Latta says he thought he was going to Hager's town. That's what Mr Latta testified to. Correct. That's what he does. But I mean, what other reasonable explanation is there from, um, for your client? I I can't answer that. I think the only thing that could be argued is that the evidence that came trial from Mr Latta was they were shooting for no reason. The walmart's taped. I mean, it's in the record. I mean, they went to walmart would like to in the morning. That's correct. And one of the things I did not see the video. But my understanding from the video and the testimony that was elicited at trial was that tank and Mason saw him and there was no, I think they had, they were shooting for no reason. Why were they just shooting clink scale? Well, I think that I mean, why wouldn't they be shooting other people? I think that that's the way their minds are working. I think tank, I think this unknown third person, I think that's clearly was his intent. Well, but they just happened and from a defense, they just happened to isolate clink scale and shoot Mr Clink scale, who just happens to have been in the same pod with Mr Mason. Uh, and one cell is directly above the other in a rather closed and confined environment where people know what other people are doing, particularly with snitching, and they just happened to be shooting at him and no other motive is suggested. Well, I think that the district judge furthermore has looked at the evidence and and said it would have bolstered clink clink scales testimony and corroborated it rather than undemanded. I think that the only thing that the records and that the only thing the records corroborated was that in fact they were together for a 10 day period in the same pod. Beyond that, I think those records no one. I thought one cell was above the other. Well, correct. And Mr Mason was on the ground floor. But again, the time frames here are critically important, and I think that that, in my view, is fatal to the impeachment. Now, in terms of I think a defense strategy could have been that Mr Tank was shooting. Mr Latta was shooting. Mr Mason was merely driving the car and there's you're in a very experienced lawyer, and you know that anytime there's gonna be a trial or anytime there's gonna be a hearing, there's gonna be some conflict as to particular times and everything. But that that those minor conflicts, which lawyers are very good at pick picking out because that's what they should be doing. Sometimes those minor conflicts, which are part of every evidentiary clash, failed to dislodge larger points. Well, and in this this case, it was their proximity and acquaintance. Well, I go back that the court asked Miss Risen Webber about this. I think that the key part here is Clink scale was the only witness as to intent because Miss Risen Webber had to impeach her own witness. And in fact, at the joint appendix of page 1 66, the district court directs the jury that the evidence for which you can determine whether or not Mr Latta is being truthful today on the stand. It is not presented as evidence against Mr Mason. Fine, but you had a chance. You know, I keep coming back. It is very, very rare that impeaching evidence is used as a basis for a new trial. It just doesn't happen very often. And the reason is, you know, that you have a witness. The jury gets to observe that witness. In this case, the district court has observed the witness in the evidentiary hearing and the witness for whatever reason, both in the trial in the collateral hearing and at trial, the witness hasn't crumbled. And you say, well, I'm sure it would have crumbled if we just found out these incidents. I'm not so sure because clink scale was he was getting a deal and that deal was brought up on cross examination and clink scale. You know when he why he mentioned it before, you know, if there were reasons to discredit clink scale and for the jury to disbelieve clink scale, those reasons were brought up by Mr Garrett. I respectfully disagree, Your Honor. I didn't expect you to do anything. I think I disagree. I think I think those records would have would have been fatal to Mr Clink skills credibility and Mr Clink scale. Just so record is clear, Mr Clink scale did not testify at the evidentiary hearing. He only testified at the trial. And again, um, there are these records in our view certainly prejudiced him and I believe I'm out of time. And unless there are other questions, I would just wish the court and the court personnel a happy holiday.
judges: William B. Traxler, Jr., J. Harvie Wilkinson III, Andre M. Davis